### In re MORGAN & WILLIAMS.

(District Court, N. D. Georgia, E. D. January 16, 1911.)

1. BANKRUPTCY (§ 58*)—ACTS OF BANKRUPTCY—PREFERENCES—PAYMENTS IN DUE COURSE OF BUSINESS.

Payments made by alleged bankrupts to creditors in due course of business and without an intent to prefer the creditors paid, or knowledge of a claim subsequently made, which if sustained might render the debtors insolvent, did not constitute acts of bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 78; Dec. Dig. § 58.*]

2. BANKRUPTCY (§ 54*)—INSOLVENCY—TERMINATION—PARTNERSHIP.

Even under the entity doctrine as applicable to the assets of a partnership, the test of solvency or insolvency within the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) depends on whether the real indebtedness of the firm to the petitioning creditor or creditors independent of the personal assets of the partners exceeds the aggregate at a fair valuation of the alleged bankrupt firm's property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 84; Dec. Dig. § 54.*]

3. BANKRUPTCY (§ 91*)—PETITIONING CREDITORS—CLAIMS—EVIDENCE.

Evidence held insufficient to sustain the claim of a petitioning creditor in a bankruptcy proceeding, so as to show the creditor's capacity to institute involuntary proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 91.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the matter of bankruptcy proceedings of Morgan & Williams. Petition dismissed.

F. H. Colley, L. C. Russell, Hamilton McWhorter, and E. K. Lumpkin, for petitioning creditor.

W. E. Simmons and G. A. Johns, for alleged bankrupt.

NEWMAN, District Judge.   On February 22, 1908, an involuntary petition in bankruptcy was filed against Morgan & Williams, a firm composed of A. S. Morgan and J. M. Williams, doing business at Winder, Ga.   The petition was by one creditor, the Washington Cotton Company, a corporation of Wilkes County, Ga., the allegation being that there were less than 12 creditors of Morgan & Williams. After alleging insolvency the petition further alleges that within four months preceding the filing of the petition Morgan & Williams, while insolvent, committed an act of bankruptcy, in that they did transfer to N. S. Turner, of Covington, Ga., a creditor, a portion of their property, some $300, with intent to prefer said creditor over their other creditors.   The same allegation is made with reference to Duckworth & Co., of Savannah, Ga., the amount alleged being $600, and the same with reference to Lehardy, Thesmer Company, of Savannah, Ga., the allegation being that they were paid the sum of $100.   The prayer of the petition is as follows:

"Wherefore your petitioner prays that service of this petition, with subpoena, may be made upon Morgan & Williams, a copartnership, and also upon A. S. Morgan and J. M. Williams, members of said copartnership, as provided by said bankruptcy act of 1898, as amended, and that said Morgan & Williams, a copartnership, and the said A. S. Morgan and J. M. Williams, be adjudged bankrupt within the purview of such law."

At the time this petition in bankruptcy was filed, an application was made to the referee in Athens for the appointment of a receiver on an ancillary petition of the Washington Cotton Company and a receiver was appointed.   After the appointment of the receiver the alleged bankrupts made application to the court for the release of the property, under section 69 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]), and entered into bond in compliance with the law, and the property was returned to them. Subsequently, on the 29th day of February, 1908, Morgan & Williams appeared and denied that they committed the acts of bankruptcy set forth in the petition, and denied that they were insolvent, and denied that they should be declared bankrupt for any cause alleged in said petition, and demanded that the same be inquired of by a jury. Afterwards this demand for a jury trial was withdrawn, and it was agreed that the case should be tried by the court, without the intervention of a jury, upon the evidence as reported by an auditor and the other documentary evidence and the files.   Before this last order was made, however, an order appointing an auditor had been entered, with the written consent of counsel for the petitioner and the alleged bankrupt firm, it being stated in the order that "the question of the nature and amounts of the claims of the Washington Cotton Company, and other creditors, consist of so many detailed transactions, involv-

ing numerous and long calculations, as to make it absolutely neces-
sary that said evidence be first heard and properly tabulated and re-
ported by an auditor," who was "to hear and ascertain the facts here-
on and report thereon to wit, his conclusions to this court, so that the
evidence and these issues can be properly submitted to a jury to pass
on the issues on which jury trial is prayed." This was not an agree-
ment to liquidate this claim, under section 63b of the bankruptcy act,
in the sense that it would then be entitled to proof and allowance as
a claim. The appointment of the auditor, by written consent of the
parties, was for the purpose of getting a statement of the claim of the
Washington Cotton Company against Morgan & Williams itemized
and set out in such a way that it would be available for use before a
jury on the trial of the question of solvency or insolvency. He has
made such a statement, and it is before the court, and is available,
as I look at it, only for the purpose of ascertaining what the claim of
the Washington Cotton Company is, provided it is entitled to recover
at all.

The real question on this part of the case is as to the right of the
Washington Cotton Company to recover this amount, or as to wheth-
er it is a real claim, for the sum indicated by the various items, against
Morgan & Williams. The respective contentions are with reference
to the right of Morgan & Williams to have what they call "franchise"
on cotton; that is, to raise the weight of the cotton somewhat to cover
what, it is claimed, is the increase in weight in crossing the ocean. A
paper was offered in evidence, which seems to me would be a proper
subject for consideration, showing that Morgan & Williams did have
a contract with a cotton firm in Savannah, allowing them 1 per cent.
"franchise." That would, I suppose, average something like five
pounds to the bale. Morgan & Williams, and a witness named
Wages, testified that Mr. Sims, representing the Washington Cotton
Company, desiring, in October, to renew business with Morgan &
Williams, which had been broken off in September, 1907, agreed with
Morgan & Williams to allow them the same "franchise" they were
getting by shipping to Savannah. Sims denied this, and said he had
no such arrangement with them. The master found in favor of the
Washington Cotton Company on this issue. I do not see how he could
have done this. The witnesses all seem to be truthful and reputable
gentlemen, there is nothing in this record to show that they were not
all men of good character, and the burden was clearly on the Wash-
ington Cotton Company to establish their claim by a preponderance
of testimony. It looks very much like the preponderance of testi-
mony, assuming them all, as I have said, to be equally creditable, was
with Morgan & Williams. This case having been submitted to the
court for trial without jury, I would be unwilling to find upon this
evidence that there was such a claim on the part of the Washington
Cotton Company against Morgan & Williams.

But even if this claim should be admitted as correct, the evidence
fails, manifestly, in showing the commission of the acts of bankruptcy
alleged in the bankruptcy petition. The three claims paid by Morgan
& Williams, and set up as acts of bankruptcy, were evidently paid by

them in the due course of business and without any knowledge whatever at the time that the Washington Cotton Company would make any claim against them. The Washington Cotton Company being the only other creditor, the payments could not have been made with intent to prefer the three firms as to whom the preference is alleged, or for the purpose of giving them preference over the Washington Cotton Company.

The amount of the claim of the Washington Cotton Company, as found by the auditor, is $4,297.85. It is conceded that the assets of the firm amounted to $4,087.43. The excess of the firm's liabilities over the firm's assets was $210.42. By apparent consent of the parties the auditor reported that the individual property of A. S. Morgan and J. M. Williams amounted to $29,000 or $30,000 of apparently good property; mainly real estate located in the town of Winder or near by.

Assuming the entity doctrine to prevail under the more recent decisions of the courts, as contended by counsel for petitioning creditor, and that the firm's assets and liabilities would be the test of solvency or insolvency as against the firm, and that notwithstanding the fact that the individuals composing the firm are proceeded against also, still it must appear, to justify an adjudication in bankruptcy, that the real indebtedness on the part of the alleged bankrupt firm to the petitioning creditor or creditors exceeds the aggregate, at a fair valuation, of the alleged bankrupt firm's property. Even if this could be passed and determined in favor of the petitioning creditor, there remains the fact that, so far as this record shows, there has never been anything done by the alleged bankrupt firm which could fairly and justly be called an act of bankruptcy.

What has been said above is entirely without prejudice to the right of the Washington Cotton Company to proceed on this claim, in a court of competent jurisdiction, and have its rights ascertained and determined. I simply find that, even assuming the auditor in this case to have had the right under the reference to pass upon the question as to whether Morgan & Williams were indebted to the Washington Cotton Company, the latter failed to carry the burden here and to show by a preponderance of the evidence that such indebtedness existed.

The petition in bankruptcy should be dismissed, and it will be so ordered.